**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CORNELIUS E. SMITH, # 19480-075,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-453-MJR** |
| | ) | |
| **JEFFERY S. WALTON, K. SANDERS,** | ) | |
| **OFFICER EBERHART, BRET MILLER,** | ) | |
| **R. PASS, M. WINKLEMEIER,** | ) | |
| **M. BAGWELL, F. CASTILLO,** | ) | |
| **NURSE RICHARDSON, K. WELLS,** | ) | |
| **OFFICER FIELDS, E. EDMISTER,** | ) | |
| **OFFICER PEARCE, J. BAGWELL,** | ) | |
| **and P. TROVILLION,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, an inmate in the United States Penitentiary in Marion, Illinois ("Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He also includes a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq*.

Plaintiff asserts that several Defendants were deliberately indifferent to his need for treatment of a serious injury to his knee. This incident also forms the basis for Plaintiff's FTCA claim. Additionally, he raises a claim that he was intentionally placed in an unsanitary cell following his knee surgery. Finally, some Defendants improperly denied him additional time in a halfway house placement, where he will spend the last six months of his sentence before being released from the custody of the Bureau of Prisons ("BOP").

According to Plaintiff's affidavit ("Appendix C," Doc. 1-2, pp. 1-5) and exhibits which he has attached to the complaint, Plaintiff injured his knee on June 27, 2014, while playing basketball on the outside yard at Marion (Doc. 1-1, p. 16).  Defendants Wells and Fields (correctional officers) arrived "almost immediately" to the spot where Plaintiff was lying on the ground, unable to move.  They attempted to contact somebody from Marion's Medical Unit to take Plaintiff back inside for medical care (Doc. 1-2, p. 2).  However, according to Plaintiff, Defendant Wells seemed to take the incident as a joke, and did not convey any sense of urgency to the medical staff (Doc. 1, p. 6).  Defendant Fields was "disoriented" and "confused" about what he needed to do to get immediate medical care, and the Medical Unit refused to answer his call.  *Id.*  After some time passed without any response from the Medical Unit, Defendant Wells had some other inmates carry Plaintiff back to the prison on a stretcher (Doc. 1-2, p. 2).

Defendant Richardson was the charge nurse on duty when Plaintiff arrived at the Medical Unit (Doc. 1, p. 5).  He blames her for refusing to come to the yard to bring him inside for medical care, and states she refused to order an x-ray of the injured knee.  She called somebody outside Marion for instructions on handling Plaintiff's emergency care.  After that call, Defendant Richardson gave Plaintiff Ibuprofen and sent him back to his housing unit with "a set of crutches, leg brace and a smile" (Doc. 1-2, p. 3).  She did nothing else to assess or treat his injury, even though his kneecap was visibly displaced and had moved "up on [his] thigh" more than twelve inches above its normal location (Doc. 1-2, p. 3; Doc. 1, p. 4).  For many days afterward, Plaintiff continued to complain that he needed medical care, but Defendant Richardson did nothing further for him (Doc. 1, p. 5).

Defendant Castillo (physician assistant) was an attending provider when Plaintiff injured his knee, and Plaintiff made requests to him for medical care during the time between his

injury and the eventual surgery (Doc. 1, pp. 5, 16; Doc. 1-1, p. 16).

Defendant Warden Walton "was notified" of Plaintiff's need for medical care, but he "abdicated his responsibility" to ensure Plaintiff's health and safety, and neglected to instruct his subordinates to fulfill their duty to provide Plaintiff with immediate care for his injury (Doc. 1, pp. 1, 13).

It was later determined that Plaintiff had ruptured his patellar tendon (Doc. 1-1, pp. 4-6). Defendant M. Bagwell was the Assistant Health Administrator at the time of Plaintiff's injury. She refused to authorize the surgery that Plaintiff needed to repair the ruptured tendon, despite his many requests for treatment and constant complaints about his pain, until 30 days had passed (Doc. 1, pp. 4, 16). Plaintiff also attributes the delay in authorizing surgery to Defendant Winklemeier, who was the Health Administrator at the time (Doc. 1, p. 4).

On August 1, 2014, Defendant Miller (an outside orthopedic surgeon on contract with the prison) performed surgery to repair Plaintiff's ruptured tendon (Doc. 1, p. 3; Doc. 1-1, p. 6). He told Plaintiff that because of the delay in scheduling the surgery, he would do his best, but Plaintiff "should not expect any great results." (Doc. 1, p. 3) Defendant Miller recommended that Plaintiff have rehabilitative treatment. However, no such treatment has been given to Plaintiff, and he has not been taken back to see Defendant Miller for follow-up visits.

According to Plaintiff, Defendant Pass (Marion Physician/Clinical Director) has refused to adhere to the post-operative treatment plan devised by Defendant Miller (Doc. 1, pp. 3, 15). Defendant M. Bagwell (who took over as Health Administrator after the departure of Defendant Winklemeier) has likewise failed to give him any rehabilitative care or treatment for his extreme knee and hip pain (Doc. 1, p. 4, 16). Defendant PA Castillo has not provided rehabilitative treatment or pain relief, and has failed to have Plaintiff taken to his outside medical

appointments (Doc. 1, p. 5).  Defendant Pearce (transportation officer) took Plaintiff from the prison to an appointment with the orthopedic surgeon and back, but failed to bring back any paperwork to document the medical visit or any procedures that were performed (Doc. 1, p. 7). Defendant Nurse Trovillion "received and reviewed" a medical procedure performed by Defendant Miller,[1] but had no medical paperwork on the procedure, medicine, or rehabilitative care that Plaintiff was to receive (Doc. 1, p. 8).

Soon after Plaintiff returned to Marion following his knee surgery, Defendant Eberhart assigned him to a "suicide cell" in the Special Housing Unit ("SHU"), in which the toilet had overflowed (Doc. 1, pp. 2, 14).  Plaintiff had a cast on his right leg that went all the way over his thigh.  He was not issued any shoes, and was not allowed to have a shower. Defendant Eberhart gave Plaintiff a mop and bucket and told him to clean up the feces and other human waste that had overflowed into the cell.  Even when Plaintiff explained that he had just undergone an operation on his leg, Defendant Eberhart refused to allow the orderlies to clean up the waste, commenting that cleaning the cell should keep Plaintiff from hurting himself (Doc. 1, p. 14).  He further refused to assist Plaintiff with obtaining a shower, appropriate socks, shoes, clothing, soap, or other items he needed (Doc. 1, pp. 2, 8).  Defendant Trovillion gave Plaintiff some Tylenol the next day while he remained in this cell (Doc. 1, p. 8).  Defendant Counselor Edmister "was complicit" in the other staff members' failure to protect him, and "was reluctant" to assist Plaintiff (Doc. 1, p. 7).

Plaintiff couches some of his allegations in terms of a "conspiracy" among certain Defendants to continue to deny him his constitutional rights.  In this vein, he asserts that Defendant J. Bagwell (computer services manager), at some unspecified date, came to the

---

[1] It is not clear from Plaintiff's wording whether this review was conducted "on or about August 8, 2014," in reference to the August 1 surgery, or whether Defendant Trovillion's review concerned a different follow-up procedure that was performed by Defendant Miller on or about August 8 (Doc. 1, p. 8).

Medical Unit with Plaintiff's identification card (Doc. 1, p. 8).  He told Plaintiff that he had the ID card and was "doing a 'little-investigation' – so it would be good for [Plaintiff] to watch [his] step."  *Id*.  Plaintiff took this as a threat, and evidence of this ongoing conspiracy against him.

Other than a brief mention in his prayer for relief, Plaintiff does not elaborate on his Federal Tort Claim arising from his knee injury (Doc. 1, p. 12).  His exhibits include a March 27, 2015, letter in reference to this claim from the Tort Claim Coordinator of the Federal Bureau of Prisons (Doc. 1-2, p. 30).  The letter notes that Plaintiff's claim was received on March 2, 2015, and instructs Plaintiff to resubmit his claim to provide further information (Doc. 1-2, pp. 30-33).  A copy of Plaintiff's tort claim form is also attached (Doc. 1-2, pp. 32-33).  On May 15, 2015, Plaintiff submitted another letter from the BOP's regional counsel, acknowledging receipt of Plaintiff's administrative FTCA claim, which he apparently resubmitted (Doc. 13, p. 2).  The letter informs him that the agency's response is not due until October 8, 2015.

Finally, Plaintiff claims that Defendant Sanders (case manager) failed to fulfill her duties to Plaintiff with reference to his quest for additional time in the halfway house under the Second Chance Act (Doc. 1, pp. 2, 14).  Defendant Walton refused to instruct his Staff Case Manager (presumably Defendant Sanders) to follow the federal statutes and administrative rules governing Plaintiff's application for halfway house placement (Doc. 1, pp. 1, 13; *see also* Doc. 1-1, pp. 23, 25-38).  According to Defendant Walton's response to Plaintiff's request for administrative remedy on this matter (Doc. 1-1, p. 32), a case manager had initially recommended Plaintiff for a ten-month halfway house placement (*see* Doc. 1-1, p. 33).  However, a problem came to light regarding Plaintiff's concurrent state sentence on a parole violation, and this caused the halfway house recommendation to be reduced to six months.  Plaintiff later documented that he had been released from the state sentence, but officials

determined that a six-month placement was sufficient in Plaintiff's case.  Plaintiff's anticipated date to be transferred to a halfway house is May 25, 2015 (Doc. 1-1, p. 36).

Plaintiff seeks injunctive relief to require the Defendants to stop denying him medical and rehabilitative care.  He wants them to pay for his treatment, and seeks money damages pursuant to the Federal Tort Claims Act (Doc. 1, p. 12).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit."  *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id.* at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements."  *Id.*  At

the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:** Eighth Amendment claim against Defendants Walton, Miller, Winklemeier, M. Bagwell, Castillo, Richardson, Wells, and Fields, for deliberate indifference to Plaintiff's serious knee injury, in that they refused to provide necessary medical care and surgery for over 30 days following the injury;

**Count 2:** Eighth Amendment claim against Defendants Miller, Pass, M. Bagwell, Castillo, Edmister, Pearce, and Trovillion, for deliberate indifference to Plaintiff's serious knee injury, in that they refused to provide necessary follow-up medical care after Plaintiff's knee surgery;

**Count 3:** Eighth Amendment claim against Defendants Eberhart, Edmister, and Trovillion, for deliberate indifference to Plaintiff's health and his serious medical condition, in that they placed Plaintiff in a cell contaminated with human waste, posing a particular danger to Plaintiff's recovery from knee surgery;

**Count 4:** Claim against the United States under the Federal Tort Claims Act;

**Count 5:** Claim against Defendants Walton and Sanders, for limiting his halfway house placement time to six months, when he sought a longer placement.

Counts 1, 2, and 3 shall proceed for further review against some of the Defendants, but other Defendants shall be dismissed from these counts. Count 4 under the FTCA shall be dismissed without prejudice, as it has been brought prematurely. Plaintiff may re-file his FTCA claim after he receives the response to his administrative claim, should it be denied. Count 5 shall be dismissed for failure to state a claim upon which relief may be granted.

**Counts 1 and 2 – Deliberate Indifference to Serious Medical Needs**

In order to state a claim for deliberate indifference to a serious medical need, an

inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the condition is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's negligence, inadvertent error, or even ordinary medical malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff describes an obvious and painful injury that displaced his kneecap, and which clearly required medical attention. The complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the Defendants acted or failed to act with deliberate indifference to a known risk of serious harm from his medical condition.

## A. Denial and Delay of Initial Medical Care (Count 1)

With reference to Count 1, Plaintiff's allegations suggest deliberate indifference

on the part of Defendant Richardson, who he says did not initially respond to the call for help on Plaintiff's behalf, failed to obtain an x-ray of his obvious injury, discharged him with perfunctory treatment, and did nothing in response to his continued requests for medical attention.  Likewise, Plaintiff claims that Defendant Castillo offered no treatment or assistance despite repeated requests for care of his injured knee.   Defendants Winklemeier and M. Bagwell delayed necessary tendon repair surgery by 30 days, which may have exacerbated the injury and prolonged Plaintiff's suffering.  Based on these statements of fact, Plaintiff may proceed with his deliberate indifference claim in **Count 1** against Defendants Winklemeier, M. Bagwell, Castillo, and Richardson.

However, Count 1 shall be dismissed without prejudice as against Defendants Walton, Miller, Wells, and Fields.  According to Plaintiff's account, Defendants Wells and Fields responded "almost immediately" when they learned Plaintiff was hurt.  They tried to obtain medical assistance for Plaintiff, and ultimately made sure he was taken to the Medical Unit when no response was forthcoming.  Despite Plaintiff's characterization that their efforts could have been more urgent and coordinated, the complaint indicates that Defendants Wells and Fields took reasonable steps to get help for Plaintiff, which is all that is required to satisfy Eighth Amendment concerns.

Defendant Miller, the surgeon, repaired Plaintiff's tendon after prison officials authorized the operation.  Nothing in the complaint indicates that he performed the surgery improperly, let alone caused any delay or otherwise showed deliberate indifference to Plaintiff's condition.

As to Defendant Walton, the facts described by Plaintiff fail to suggest that he was personally involved in any decisions regarding Plaintiff's medical treatment, or lack thereof.

Civil rights claims under *Bivens* and 42 U.S.C. § 1983 are based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted).   A *Bivens* action is the federal equivalent of a § 1983 civil rights action, thus the same rule applies in the case at bar. *See Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (collecting cases).

In order to state a claim against a Defendant, a plaintiff must describe what each named Defendant did (or failed to do), that violated the plaintiff's constitutional rights.   Plaintiff fails to explain how or when Defendant Walton "was notified" of Plaintiff's medical needs.   This conclusory statement does not demonstrate deliberate indifference on the part of Defendant Walton.   If a prisoner is under the care of prison medical professionals, a non-medical prison official such as the warden "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).   Plaintiff is attempting to pin liability on Defendant Walton based on his general supervisory responsibilities to train his subordinates and to ensure that inmates' health and safety are protected.   But this does not suffice to state an Eighth Amendment claim. The doctrine of *respondeat superior* is not applicable in a civil rights action.   *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).   Accordingly, Defendant Walton shall be dismissed from Count 1.

To summarize, **Count 1** shall proceed only against Defendants Winklemeier, M. Bagwell, Castillo, and Richardson.   Defendants Walton, Miller, Wells, and Fields are dismissed from Count 1 without prejudice.

**B.  Denial of Post-Surgical Medical Care/Rehabilitation (Count 2)**

Plaintiff alleges that Defendants Pass, M. Bagwell, and Castillo all refused to provide him with rehabilitation care following his surgery, and have failed to treat his ongoing knee and hip pain.  Defendant Castillo failed to send Plaintiff for follow-up appointment(s) with the orthopedic surgeon.  At this stage of the litigation, Plaintiff may proceed with his deliberate indifference claims in **Count 2** against these Defendants.

However, the complaint fails to state a claim upon which relief may be granted against Defendants Miller, Edmister, Pearce, or Trovillion with reference to Plaintiff's need for follow-up medical care.  Defendant Miller, the surgeon, *recommended* particular rehabilitative treatment, which other Defendants failed to provide.  This does not demonstrate deliberate indifference on his part, but suggests just the opposite.  The only allegation against Defendant Pearce is that he failed to bring back paperwork regarding Plaintiff's medical appointment(s); even if this is true, it does not come close to the knowing disregard of a significant risk to Plaintiff's health that is required to state a deliberate indifference claim.  Similarly, the allegation against Defendant Trovillion is that she performed some review of a medical procedure but lacked the necessary paperwork on the procedure or follow-up care.  This situation does not indicate any deliberate indifference on the part of Defendant Trovillion.  Lastly, the allegations against Defendant Edmister are too vague and conclusory to support a deliberate indifference claim.  Plaintiff's statements do not indicate that Defendant Edmister was personally involved in determining what medical care would be provided to him; Plaintiff merely says that this Defendant was "complicit" with other staff members and was "reluctant" to assist him or make calls on his behalf.

**Count 2** shall proceed only against Defendants Pass, M. Bagwell, and Castillo.

Defendants Miller, Edmister, Pearce, and Trovillion are dismissed from Count 2 without prejudice.

## Count 3 – Unsanitary Cell Conditions – Deliberate Indifference

As with the medical treatment claims above, a claim involving conditions of confinement in a prison has two required elements to establish a violation of the Eighth Amendment's cruel and unusual punishments clause.  First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions.  *Farmer*, 511 U.S. at 837, 842.

Unsanitary conditions, in particular those involving exposure to human waste, are recognized as creating a serious health risk.  *See, e.g., Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls smeared with blood and feces).  Further, the denial of access to "adequate sanitation and personal hygiene items" may demonstrate a deprivation of "the minimal civilized measure of life's necessities."  *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (citing *Farmer*, 511 U.S. at 834); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012); *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006); *Vinning-El*, 482 F.3d at 924).  Plaintiff does not say how long he was required to remain in the cell contaminated with overflowing sewage, without appropriate clothing, shoes, soap, and other items.  However, his allegation that Defendant Eberhart knowingly housed him in those conditions, and left him there

without assistance even after Plaintiff informed him of his recent operation, sufficiently states a deliberate indifference claim against Defendant Eberhart.

Plaintiff appears to also mention Defendants Trovillion and Edmister in connection with the unsanitary cell claim. However, he does not say that either of them was aware of the unhealthy conditions or had any personal involvement in keeping Plaintiff in that cell or refusing to assist him with mitigating the conditions. Accordingly, **Count 3** shall proceed only against Defendant Eberhart. Defendants Trovillion and Edmister shall be dismissed from Count 3 without prejudice.

**<u>Dismissal of Count 4 – Federal Tort Claim</u>**

Federal Prisoners may bring suit against the United States under the Federal Tort Claims Act ("FTCA") for injuries they sustain while incarcerated. *See Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). However, the prisoner must first present the claim to the federal agency responsible for the injury. *Id.* Under the act,

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). Plaintiffs bringing claims under the FTCA generally show exhaustion by filing with their complaint a copy of the "final denial of claim" letter indicating that agency review has been completed and the individual may seek relief in court.

The documents submitted by Plaintiff in connection with his FTCA claim clearly demonstrate that review of his claim by the Bureau of Prisons has not been completed. His claim

was initially filed only on March 2, 2015, and he was directed on March 27, 2015, to resubmit the claim with complete information.  Plaintiff filed this lawsuit on April 23.  Then on April 28, 2015, the BOP issued its notice that Plaintiff's resubmitted claim was received on April 9, and the agency's response would be due within six months, by October 8, 2015.  As such, the time for the BOP to rule on Plaintiff's claim has not yet elapsed, and Plaintiff cannot demonstrate that he has exhausted that administrative review process.  Plaintiff's FTCA claim has thus been filed prematurely in this action.  Accordingly, **Count 4** shall be dismissed, without prejudice to the claim being re-filed once exhaustion has been accomplished.

Plaintiff has named several prison officials as Defendants in this case.  However, in an action under the FTCA, the United States of America is the only proper Defendant.  *See* 28 U.S.C. § 2679(b); *FDIC v. Meyer*, 510 U.S. 471 (1994).  Therefore, Plaintiff is **ADVISED** that if he re-files this FTCA claim in court following the agency review, he should name the United States as the sole Defendant.

## Dismissal of Count 5 – Halfway House Placement

Petitioner asserts that Defendants Walton and Sanders violated federal statutes at 18 U.S.C. § 3621(b) & (c), and 42 U.S.C. § 17541(a), and that Defendant Sanders violated his constitutional rights, when they determined that he would be placed in a halfway house for only six months, rather than the ten months that had been recommended by another case manager (Doc. 1, pp. 1-2, 13-14).  He claims that he was lied to regarding the U.S. Probation Department's statements about his application for halfway house placement.

The "Second Chance Act" referenced by Plaintiff took effect in 2008.  It expanded the maximum time a federal inmate could spend in a halfway house from six months to twelve months.  18 U.S.C. § 3624(c)(1).  There are five statutory factors that prison staff are to

consider in each case, in order to determine the appropriate length of halfway house time for the inmate.[2]  However, the BOP is vested with discretion to decide on the duration of an inmate's placement in a halfway house.  18 U.S.C. § 3621(b) ("The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . .").  The other statute cited by Plaintiff, 42 U.S.C. § 17541(a), directs the Attorney General and the BOP to develop programs and procedures to assist inmates nearing the end of their sentences to successfully re-integrate back into the community.

The Court cannot discern, nor does Plaintiff articulate, any violation of the above statutes by Defendants Walton or Sanders.  While placement in a halfway house for up to twelve months is authorized, it is not mandated.  Prison officials have discretion to allow any amount of halfway house time that they deem appropriate, so long as it does not exceed the twelve-month limit.  Plaintiff's six-month assignment is well within the authorized time frame.

It appears that Plaintiff's dissatisfaction stems from the fact that he expected to be given ten months in the halfway house based on the initial recommendation of a case manager, but ultimately got a shorter placement when the final decision was made.  Plaintiff may be attempting to assert a constitutional due process claim based on the "deprivation" of the extra four months that he did not receive.  However, in order for a due process claim to exist, Plaintiff must have had a protected liberty interest in the additional halfway house placement.  Not every action that carries with it negative consequences creates a liberty interest for inmates.  *Moody v. Daggett*, 429 U.S. 78, 86-88 (1976).  As a rule, "prisoners possess neither liberty nor property in

---

[2] These factors are:  the resources of the facility contemplated; the nature and circumstances of the offense; the history and characteristics of the prisoner; any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of penal or correctional facility as appropriate; and any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.  18 U.S.C. § 3621(b).

their classifications and prison assignments.  States may move their charges to any prison in the system."  *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)); *see also Meachum v. Fano*, 427 U.S 215, 223-24 (1976) (the Constitution does not guarantee placement in a particular prison).  While a halfway house is a less restrictive environment than a prison, an inmate remains in the custody of the BOP during his halfway house placement, and is still serving his sentence while there.

The Court concludes that no protected liberty interest is at stake here.   First, the statute makes no guarantee of *any* halfway house placement at all, but leaves that decision up to the discretion of prison officials.   Secondly, according to Plaintiff's documentation, the contemplated ten-month placement was a recommendation only, not a final decision as to the length of his halfway house time.  It cannot be said that he acquired a liberty interest in the full ten months merely because a case manager made that recommendation or request on his behalf.  Based on these facts, Plaintiff was not deprived of any liberty interest, and no due process concerns are implicated.  The claim in **Count 5** shall therefore be dismissed with prejudice.

## Dismissal of Defendant J. Bagwell

Plaintiff does not connect Defendant J. Bagwell (computer services manager) to any of the claims enumerated above.  He merely mentions Defendant J. Bagwell's comment regarding an investigation, which he took as a threat and indication of an "on-going conspiracy to continue to deny" Plaintiff his constitutional rights (Doc. 1, p. 8).  Plaintiff's only other mention of this alleged "conspiracy" is that Defendant Fields (who was on the scene when Plaintiff was injured) "actively enrolled/engaged in a veiled conspiracy to deny Plaintiff Smith his U.S. Constitutional Rights of 1st, 4th, 5th, 6th, 8th, & 14th Amendments" (Doc. 1, p. 6), and that Defendant Pearce (the transportation officer) "entered into the forming veiled conspiracy to

continue to deny [Plaintiff] medical care" (Doc. 1, p. 7).

As discussed above, Plaintiff failed to state a deliberate indifference claim against either Defendant Fields or Defendant Pearce.  Conspiracy is not an independent basis of liability in a civil rights action.  *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).  "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution."  *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).  Plaintiff's allegations do not state a claim for conspiracy, and the verbal comments by Defendant J. Bagwell did not violate any constitutional right.  *DeWalt v. Carter* 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws.").  Defendant J. Bagwell shall thus be dismissed from the action with prejudice.  Any conspiracy claim against Defendants Fields and Pearce shall also be considered dismissed.

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) is **GRANTED IN PART AND DENIED IN PART.**  Service shall be ordered below on those Defendants who remain in the action.  No service shall be made on the dismissed Defendants.

**Disposition**

**COUNT 4** is **DISMISSED** without prejudice as prematurely filed.  **COUNT 5** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  Defendants **WALTON, MILLER, WELLS, FIELDS, EDMISTER, PEARCE,** and

TROVILLION are **DISMISSED** from this action without prejudice.  Defendants **SANDERS** and **J. BAGWELL** are **DISMISSED** from this action with prejudice.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **EBERHART, PASS, WINKLEMEIER, M. BAGWELL, CASTILLO,** and **RICHARDSON**; the Clerk shall issue the completed summons.  The United States Marshal **SHALL** serve Defendants **EBERHART, PASS, WINKLEMEIER, M. BAGWELL, CASTILLO,** and **RICHARDSON** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[3]  All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.

---

[3]  Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7**

**days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

> **IT IS SO ORDERED.**
>
> **DATED: May 19, 2015**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court
